UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:19-cv-1638-Orl-37LRH

ACTIVENGAGE, INC.,

    Plaintiff,

v.

TODD L. SMITH,

    Defendant.

_____/

### EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

Plaintiff, ACTIVENGAGE, INC. ("ActivEngage"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 62(d), moves for the entry of an injunction against Defendant, TODD SMITH ("Smith") pending the outcome of ActivEngage's appeal.

#### INTRODUCTION

ActivEngage seeks an injunction pending appeal so that the Court of Appeals has the opportunity to review the record below and determine if ActivEngage should have been afforded an opportunity to conduct discovery and an evidentiary hearing on its motion for preliminary injunction, and if the district court's findings of fact in the order denying the motion were, in fact, supported by competent substantial evidence. If such relief is not granted, and Smith is permitted to engage in further misappropriation of trade secrets and breaches of his fiduciary duty owed to ActivEngage, ActivEngage will be irreversibly harmed if the Court of Appeals reverses the district court's order and it is ultimately determined that injunctive relief is proper.

1

# FACTUAL BACKGROUND[1]

ActivEngage adopts and incorporates the allegations of its recently-filed Second Amended Complaint herein.[2] Formed in 2007, ActivEngage provides live call, e-mail, chat, and texting services to car dealerships in North America. Smith served as ActivEngage's Chief Executive Officer ("CEO") from 2007 until November 26, 2018. Smith owns thirty-three percent (33%) of ActivEngage's stock. ActivEngage and its shareholders, including Smith, are parties to that certain Amended and Restated Stockholder Agreement dated July 17, 2009 (the "Stockholder Agreement").[3] Article 8 of the Stockholder Agreement prohibits the disclosure of ActivEngage's Confidential Information (i.e., trade secrets and nonpublic technical information).

As part of Smith's duties at ActivEngage, Smith was the product and project manager of a software project then-known as ActivProspect. The ideation, roadmap, business plan, and financial model for ActivProspect were all developed while Smith was CEO of ActivEngage. Smith and other ActivEngage employees began conceptualizing ActivProspect in or about 2015 to respond to unmet needs of car dealerships in the auto industry, the primary customers of ActivEngage. ActivProspect was the next generation of features ActivEngage would provide to its car dealer customers. ActivProspect was being conceptualized and later designed as a mobile-first software application to assist car dealerships in managing customer leads, including keeping track of responses to call, e-mails, chats, and texts, while incorporating additional information available from other data aggregators and providers to enhance information available to the salespeople in

---

[1] In the interest of brevity, ActivEngage's Motion for Preliminary Injunction dated September 18, 2019 (Doc. 9) is incorporated herein.

[2] Plaintiff has sought similar injunctive relief in its newly-filed Second Amended Complaint. Plaintiff recognizes that if this Court grants a new hearing on the request for preliminary injunction based on the allegations of the Second Amended Complaint and vacates the order on appeal, which endeavored to resolve disputed factual issues without an evidentiary hearing, the appeal and this motion may be rendered moot.

[3] The Stockholder Agreement is attached to the Second Amended Complaint as Exhibit A.

the dealerships to be more effective in addressing the customer leads and ultimately, to sell more cars. ActivEngage financed all expenses related to the concept and development of ActivProspect; Smith did not personally finance any expenses for ActivProspect.

On or about November 26, 2018, Smith ceased to be employed by ActivEngage but continued to hold approximately thirty-three percent (33%) of ActivEngage's stock.  After his termination, ActivEngage demanded that Smith return all documentation and other information relating to ActivProspect, as well as the company's computer, but Smith refused.  ActivEngage subsequently discovered that Smith, through a company he formed in 2015 unbeknownst to ActivEngage, began to compete with ActivEngage in violation of the Stockholder Agreement. That company, 360Converge, Inc. ("360Converge"), with assistance from another individual, Mike McFall, intends to use the ActivProspect application under the name "360Prospect" or "360Converge."  Smith began developing the new 360Converge platform while he was still employed by ActivEngage and after he instructed ActivEngage employees to cease developing ActivProspect in or around August 2019. 360Converge derives largely from the revenue models and technical information that was developed by ActivEngage. Smith even approached and engaged ActivEngage's graphic designer who largely crafted the visual design of ActivProspect to duplicate his efforts for 360Converge and paid him "on the side" for his efforts. ActivEngage has received information from reliable sources in the industry that the 360Converge product has been offered to car dealerships for testing or sale in 2019.

**PROCEDURAL HISTORY**

On January 23, 2019, ActivEngage filed its Complaint against Smith in state court.  An Amended Complaint was filed on August 23, 2019.  The Amended Complaint contained three (3) causes of action against Smith for: (1) violation of FUTSA; (2) violation of the DTSA; and (3)

breach of fiduciary duty. In the Amended Complaint, ActivEngage requested damages, injunctive relief, and that Smith be compelled to disclose to the Court all unauthorized confidential information provided to any third parties and all steps taken to recover ActivEngage's confidential, proprietary, and trade secret information.

On February 19, 2019, ActivEngage filed its Verified Motion for Temporary Injunction and Incorporated Memorandum of Law. The state court determined that an evidentiary hearing was required based on the facts the case. While the action was pending in state court, ActivEngage employees and directors were deposed, including Clifford Stein, Ted Rubin, and Michael Third. Smith was scheduled to be deposed on August 23, 2019.

On August 21, 2019, two (2) business days before Smith's scheduled deposition, Mr. Smith removed the case to federal district court. The notice of removal was timely filed within thirty (30) days of the filing of ActivEngage's Amended Complaint. The removal effectively cancelled the scheduled hearing on ActivEngage's Verified Motion for Temporary Injunction and Incorporated Memorandum of Law as well as Smith's deposition..

ActivEngage filed its Verified Motion for Preliminary Injunction and Incorporated Memorandum of Law (the "Motion") in this Court on September 18, 2019. On Friday, September 20, 2019, the Court issued an Order setting a hearing on ActivEngage's Motion for a hearing on October 16, 2019. (Doc. 11). The Court required ActivEngage to file any further evidence or affidavits in support of the Motion by Tuesday, September 24, 2019 (two business days from the date of the Order). The Court permitted Todd Smith to respond in opposition by October 8, 2019 and provided ActivEngage the ability to file a reply (not to exceed five pages) by October 15, 2019. In its reply, ActivEngage was not permitted to file rebuttal affidavits or other evidence in support of its Motion. In the September 20, 2019 Order, the Court also truncated the hearing to a

thirty (30) minute oral argument per side and did not permit evidence to be taken at the hearing. In accordance with the Court's September 20, 2019 Order, the hearing on ActivEngage's Motion occurred on October 16, 2019. On November 5, 2019, this Court entered an Order denying ActivEngage's Motion. (Doc. 35). The Court found that ActivEngage did not have substantial likelihood of success on the merits as to its DTSA and FUTSA claims. (*Id.*) However, the district court did not make any findings of fact regarding ActivEngage's likelihood of success on the merits on its breach of fiduciary duty claim. The Court determined that ActivProspect was not a trade secret, and that, even if it was, ActivEngage had not demonstrated misappropriation. (*Id.*)

On December 4, 2019, ActivEngage timely filed a Notice of Appeal with respect to the Court's November 5, 2019 Order.

### ARGUMENT AND MEMORANDUM OF LAW

The Federal Rules of Civil Procedure provide:

> While an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62.

Similar to the standard for securing a preliminary injunction, to secure a stay or an injunction pending appeal, the moving party must demonstrate: (1) a strong showing of the likelihood of success on the merits; (2) that the moving party will be irreparably injured absent the relief; (3) that the issuance of the stay or injunction will not substantially injure the other parties interested in the proceeding; and (4) that the public interest will not be adversely affected by the requested relief. *Sierra Club v. U.S. Army Corps of Engineers*, 2007 WL 402830, at *1 (M.D. Fla. Feb. 1, 2007) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987). "[I]ndividualized judgments"

5

of each factor must be made in each case, and "the formula [for doing so] cannot be reduced to a set of rigid rules." *Hilton,* 481 U.S. at 777.

While a finding that the movant demonstrates a probable likelihood of success on the merits on appeal warrants the issuance of a stay, "the movant may also have his motion granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of the equities [as to the factors of irreparable harm, prejudice to the opposing party, and the public interest] weighs heavily in favor of granting the stay." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) (internal citations omitted).

**I.  ActivEngage is Likely to Succeed on the Merits on Appeal.**

A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires a determination that the trial court's order was erroneous. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). On appeal, ActivEngage will argue that: (1) a full evidentiary hearing on the Motion was required; (2) that this Court erred in resolving disputed issues of material fact in favor of Smith without an evidentiary hearing, or at least giving ActivEngage an opportunity to rebut Smith's affidavits; and (3) the Court's November 5, 2019 Order made no findings of fact regarding ActivEngage's likelihood of success on the merits on its breach of fiduciary duty claim which, in and of itself, could have warranted preliminary injunctive relief.

**A.  ActivEngage Should Have Been Afforded a Full Evidentiary Hearing.**

In this case, an evidentiary hearing should have been conducted because: (a) Smith's deposition was cancelled by virtue of the notice of removal; (b) the Federal Rules of Civil Procedure did not permit ActivEngage to immediately re-set Todd Smith's deposition before the October hearing date; and (c) cross-examination and rebuttal evidence was not permitted by the Court's September 20, 2019 Order.

6

"Generally, of course, a judge should not resolve a factual dispute on affidavits or depositions, for then he is merely showing a preference for "one piece of paper to another." *McDonald's Corporation v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998) (internal quotations omitted). To that point, in *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, the Eleventh Circuit held that the district court abused its discretion in canceling an evidentiary hearing in favor of a non-evidentiary telephone hearing. 320 F.3d 1205 (11th Cir. 2003). The Court stated that "two-day notice, coupled with thirty minutes for oral presentations[,] can hardly be said to constitute a meaningful opportunity to oppose appellees' motion for preliminary injunction." *Id.* at 1210-11. The Eleventh Circuit reasoned that while an evidentiary hearing is not always required for a preliminary injunction hearing, "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *Id.* at 1211 (quoting *McDonald's Corporation v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998) (citing *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc. v. South Florida Hospital Association, Inc.*, 887 F.2d 1535 (11th Cir. 1989). Ultimately, in *Four Seasons*, the Court reversed the decision of the district court and found that the district court was required to hold an evidentiary hearing which would afford both parties with the opportunity to meaningfully present their arguments and educate the Court about the relevant issues involved. *Id.* at 1212.

Likewise, in *All Care Nursing*, the Court held that the district court abused its discretion in failing to hold an evidentiary hearing. 887 F.2d at 1539. Given the disputed issues, the Court found that it was incumbent on the district court to allow the parties to present evidence, including the testimony of live witnesses, and to allow for cross-examination. *Id.* at 1537. In *All Care Nursing*, the district court permitted the parties to file written affidavits in support of their positions

and to make brief oral arguments. *Id*. at 1538-39. Even though the appellants did not request an evidentiary hearing, the Eleventh Circuit found that an evidentiary hearing was necessary because of the contested issues of fact and the complexity of the case. *Id.* at 1539.

In the instant case, an evidentiary hearing was required due to the contested and disputed issues of material fact, coupled with the fact that ActivEngage did not have an opportunity to refute Todd Smith's allegations in his Affidavit in opposition to the Motion. At the outset, the issue of whether ActivEngage constitutes a trade secret is a highly contested question of fact. *Treco International S.A. v. Kromka,* 706 F.Supp.2d 1283, 1286 (11th Cir. 2010); *see also Furmanite America Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d at 1134, 1149 (M.D. Fla. 2007) ("The term trade secret is one of the most elusive and difficult concepts in the law to define … [and] normally resolved by a fact finder **after full presentation of evidence from each side**.") (emphasis added).

The characterization of ActivProspect is also a highly contested issue. ActivEngage contends that ActivProspect is a next generation customer relationship management platform. Smith refutes this, and challenged any similarity of 360Converge to ActivProspect. Smith also contended that ActivEngage was not a unique combination of features, such that it could not constitute a trade secret. The Court adopted Smith's position. However, ActivEngage was not afforded an opportunity to challenge Smith's characterization of ActivProspect or 360Converge, through cross-examination or otherwise. This prejudiced ActivEngage.

Likewise, whether ActivEngage took reasonable steps to ensure the secrecy of ActivProspect is a highly contested issue of fact. Through deposition testimony, verified court filings, and affidavits, ActivEngage set forth the efforts it undertook to protect the secrecy of ActivProspect, including, but not limited to the Stockholder Agreement which required Smith to

hold ActivProspect in confidence. However, the Court largely adopted Smith's version of the facts, which ActivEngage refutes but was not afforded an opportunity to rebut.

Lastly, the issue of misappropriation is highly contested. The Court found that ActivEngage has not presented evidence that Smith told anyone at 360Converge or outside of 360Converge about ActivProspect and that Smith "explained in detail how ActivProspect and 360Converge are different." (Doc. 35). However, ActivEngage was not afforded any opportunity to cross-examine Smith regarding what he alone contended were differences between the platforms nor was ActivEngage permitted to depose him regarding misappropriation.

In sum, ActivEngage has a substantial likelihood of success on appeal. The Court made numerous findings based upon Smith's affidavit. The Court noted in its Order that several facts set forth in Smith's affidavit remained uncontroverted. However, due to the fact that no evidentiary hearing was permitted, no rebuttal affidavits were permitted, and Smith was never deposed, it was impossible to controvert several of the facts in Smith's affidavit which are disputed. Likewise, the Court's determinations of fact on heavily contested issues without a full evidentiary hearing is reversible error.

> **B. The Court's Order Made No Findings as to Likelihood of Success on the Merits of ActivEngage's Breach of Fiduciary Duty Claim.**

The Court's November 5, 2019 Order recited the elements of ActivEngage's pending breach of fiduciary duty claim. However, the Court made no specific findings as to whether ActivEngage had substantial likelihood of success on the merits of this claim. The Court was required to make findings regarding the breach of fiduciary duty claim because substantial likelihood of success on the merits means "substantial likelihood of success on the merits **of one or more** of its claims." *Primo Broodstock, Inc. v. American Mariculture, Inc.*, 2017 WL 1502714 at *4 (M.D. Fla. 2017) (emphasis added).

9

"The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Border Collie Rescue, Inc. v. Ryan*, 418 F.Supp.2d 1330, 1342 (M.D. Fla. 2006) (citing *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla. 2002)). In this case, Smith owed both an express fiduciary duty which arose by virtue of the Stockholder Agreement and an implied common law fiduciary duty that arose from his employment status as CEO at ActivEngage. *See Stateline Power Corp. v. Kremer*, 404 F.Supp.2d 1373, 1379-1380 (S.D. Fla. 2005) (finding that an employee had both an express fiduciary duty that arose by operation of contract and an implied fiduciary duty to his employer).

Smith owed an implied fiduciary duty to ActivEngage. "[A]n employee may not engage in disloyal acts in anticipation of his future competition, such as using confidential information acquired during the course of his employment...."*See Kromka*, 706 F. Supp. 2d at 1288; *see also Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F. Supp. 2d 1134, 1149 (M.D. Fla. 2007) (noting also that "[a]n employee does not have to be managerial in order to have this duty of loyalty."); *Stateline Power Corp. v. Kremer*, 404 F. Supp. 2d 1373, 1380 (S.D. Fla. 2005) (former employee's fiduciary duties to former employer 'arose from his employment status and were not all specifically delineated in the Employment Agreement')). Moreover, an employee may not "carry on a rival business during his employment" or "engage in disloyal acts in anticipation of his future competition." *Think Vacuums, Inc. v. Mar.*, 2011 WL 579201, at *2 (S.D. Fla. 2011). Smith was the CEO and a director and 33% shareholder of ActivEngage. He owed, and continues to owe, ActivEngage a fiduciary duty.

Likewise, Smith had an express duty to keep ActivEngage's information confidential, regardless of whether such information was a trade secret. An employee may have a fiduciary duty to keep information confidential when he agrees to do so. *See Sensormatic Elecs. Corp*, 632 F.

Supp. 2d at 1191 (S.D. Fla. 2008) ("[w]hen a person has a fiduciary duty to keep information confidential, disclosing that information is a breach of fiduciary duty.").

Smith and ActivEngage are parties to the Stockholder Agreement. The Stockholder Agreement defines Confidential Information, as relevant here, as "any non-public technical information, trade secrets and any other information regarding the business affairs of the Company or of the Shareholders . . . that is of value and is treated as confidential." *See* Stockholder Agreement, Sec. 1.03. The Stockholder Agreement prohibits any stockholder of ActivEngage from disclosing any Confidential Information, as that phrase is defined in Section 1.03:

> Each Shareholder agrees on behalf of himself or itself and its employees, agents, Affiliates and assigns to treat and hold in confidence and not disclose all Confidential Information that such Shareholder may have obtained from the Company or any Affiliate of the Company as a result of owning any of the Company's Equity Securities or the performance of this Agreement.  Such limitation shall continue for so long as such Confidential Information remains a trade secret under law or, if such Confidential Information is not a trade secret under law, for so long as the Shareholder holds any Equity Securities of the Company and for a period of three (3) years thereafter.

Stockholder Agreement, Art. 8.

The Court determined that ActivProspect was not a trade secret. However, even if ActivProspect was not a trade secret, the definition of "Confidential Information" that is set forth in the Stockholder Agreement is broader than the paradigm FUTSA/DTSA definition of a trade secret. It is well-established that "parties to a contract have the right to define the terms of that contract." *Buce v. Allianz Life Ins. Co.*, 247 F.3d 1133, 1150 (11th Cir. 2001) (Barkett, J., concurring); *see also Okeechobee Resorts, L.L.C. v. E Z Cash Pawn, Inc.*, 145 So. 3d 989, 993 (Fla. 4th DCA 2014) ("Contracts are voluntary undertakings, and contracting parties are free to bargain for—and specify—the terms and conditions of their agreement.").

ActivProspect falls squarely within the Stockholder Agreement's broad definition of Confidential Information, which broadly encompasses "non-public technical information" and

11

"information regarding the business affairs of the Company." *See* Stockholder Agreement, Sec. 1.03. Therefore, because Smith still owns a third of ActivEngage stock, he is contractually obligated to treat ActivProspect as Confidential Information. Nonetheless, Smith failed "to treat and hold in confidence and not disclose all Confidential Information that [Smith] may have obtained from the Company." *See* Stockholder Agreement, Art. 8. Instead, he usurped the ActivProspect platform to create a new product for sale. *See Primo Broodstock*, 2017 WL 1502714, at *6 (entering preliminary injunction where defendants breached a non-disclosure agreement which broadly defined confidential information by using information relating to a product to create a new product, which was "disclosed" when defendants sold their new product to others). Therefore, an injunction is appropriate. To that point, the Stockholder Agreement provides:

> …the parties hereto acknowledge and agree that the Company shall have the right to pursue any claim for specific performance, **injunction, or other equitable relief in a court of competent jurisdiction**…in the event of any breach of attempted breach of any restrictive covenants regarding competition, solicitation, or confidentiality to which the Company is a beneficiary.

Stockholder Agreement, Sec. 11.18 (emphasis added). Because the Stockholder Agreement specifically provides for injunctive relief as a remedy for breach, it is appropriate. *See Sensormatic Electronics Corp. v. TAG Co. US, LLC*, 632 F.Supp.2d 1147 (S.D. Fla. 2008) (finding injunctive relief appropriate where a former employee disclosed confidential information in violation of an employment agreement where the employment agreement "specifically provide[d] for injunctive relief as a remedy for breach.").

As set forth above, ActivEngage has a substantial likelihood of success on appeal as to these two issues, namely: (1) whether it should have been afforded a full evidentiary hearing on its Motion; and (2) whether the Court was required to make findings of fact as to ActivEngage's breach of fiduciary duty claim.

## II. ActivEngage Has a Substantial Case on the Merits.

In addition to having a substantial likelihood of success on appeal, ActivEngage also has a substantial case on the merits.

### A. Absent Injunctive Relief, ActivEngage Will Be Irreparably Harmed.

"Pursuant to Florida law, irreparable harm is presumed when a party appropriates or intends to appropriate trade secrets for its own use." *Backjoy*, 2015 WL 12915119 at *3 (quoting *S.E. Mech. Servs., Inc. v. Brody*, 2008 WL 4613046, at *15 (M.D. Fla. Oct. 15, 2008)). An irreparable injury is an injury that cannot be undone via monetary remedies. *N.E. Florida Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896 F.2d 1283, 1285 (11th Cir. 1990). The injury must be both actual and imminent, but neither remote nor speculative. *Id.* (citation omitted). As one court has noted:

> [I]njunctive relief is sought not to guarantee the existence of a fund from which to satisfy a money judgment once it is obtained, but rather to diminish the effect of the ongoing violations, to stop the bleeding so to speak, and thereby diminish the damages which are incapable of reasonable ascertainment and which are, by definition, irreparable.

*I.C. Sys., Inc. v. Oliff*, 824 So. 2d 286, 287 (Fla. 4th DCA 2002) (holding that appellant established would suffer irreparable harm if the Court did not grant an injunction.).

Moreover, "irreparable harm is presumed in cases of breach of non-compete agreements and confidentiality provisions where, as here, the employee revealed specific trade secrets to his new employer." *See ACR Electronics, Inc. v. DME Corporation*, 2012 WL 13005955 (S.D. Fla. 2012). To that point, in *ACR*, the court found irreparable harm:

> …by virtue of Defendant'[s] wrongful use of [Plaintiff's] proprietary and trade secret information in the past. The Court also finds that [Plaintiff] will suffer irreparable harm in the future if Defendants are permitted to continue to make wrongful use of its proprietary and trade secret information….By virtue of the wrongful use of [Plaintiff's] proprietary and trade secret information, [Defendant] has obtained an unfair competitive advantage. …Without the use and benefit of [Plaintiff's] confidential and proprietary and trade secret information, [Defendant]

13

> would not, for a considerable period of time, be able to place a product on the market which could effectively compete with [Plaintiff's product]. Allowing [Defendant] to enter the market at an accelerated pace with [Defendant's product] based on its wrongful use of [Plaintiff's] proprietary and trade secret information will irreparably harm [Plaintiff's] business and its goodwill. Such damage cannot be adequately compensated with monetary damage.

*Id.* at *14.

This is precisely what has occurred in this case. The 360Converge revenue model is derived from the wholesale pricing, fees, and marketing cost discussions and projections created while Smith was CEO at ActivEngage. The 360Converge platform at large is a derivative of the ActivProspect platform. The development of ActivProspect effectively gave Smith a "head start" in developing 360Converge. The damage to ActivEngage is particularly harmful because ActivProspect platform is the basis for the next generation software that ActivEngage intends to provide to its customers being the first to market in the technology industry is critically important. ActivEngage's damages are incapable of reasonable ascertainment in large part because Smith's ongoing misappropriation will continue to increase ActivEngage's damages until Smith is prohibited from engaging in ongoing misappropriation of ActivProspect. *See VAS Aero Services, LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1363 (S.D. Fla. 2012) (holding that misappropriation of trade secret information resulted in irreparable injury to plaintiff.

    **B.**    **Granting Injunctive Relief Will Not Substantially Injure Smith.**

A party seeking an injunction pending appeal must demonstrate that the threatened injury to the plaintiff outweighs any potential harm to the defendant. *Garcia-Mir*, 781 F.2d at 1453. The injury threatened to ActivEngage by Smith's continuance of misappropriating ActivProspect, breaching his fiduciary duty to ActivEngage, and continuing to breach the Stockholder Agreement far outweighs any threatened harm an injunction would cause to Smith. *See Truepenny People LLC v. Cota*, 2016 WL 9308534, at *2 (N.D. Fla. Oct. 18, 2016). "[B]ecause Plaintiff owns the

trade secrets and confidential and proprietary information is at stake, the harm to Plaintiff outweighs any threat of potential harm to the Defendant from the injunction." *Id.* "[T]hreatened injury to Plaintiffs undoubtedly outweighs the potential hardship to Defendant. *Hayes Healthcare Services, LLC v. Meacham*, 19-60113-CIV, 2019 WL 2637053, at *5 (S.D. Fla. 2019). "Plaintiffs face the potential loss of business from the misappropriation of their trade secrets, whereas [Defendant] would not be harmed by being enjoined from possessing information that he has no right to in the first place." *Id*.

In his operation of 360Converge, Smith is positioned to use ActivProspect to his benefit and to the benefit of 360Converge, which provides both with an unfair advantage over ActivEngage in the markets that both ActivEngage and 360Converge operate and compete in. Therefore, the threatened harm against ActivEngage if Smith's misappropriation of ActivProspect is not prohibited is both substantial and ongoing. *See CiCi Enterprises, LP v. Four Word Motion, LLC*, 2016 WL 9244626, at *12 (M.D. Fla. 2016) (finding threatened harm to Plaintiff resulting from Defendants' misappropriation exceeds any harm to Defendants that may result from enjoining such misappropriation). In other words, the threatened harm an injunction would cause to Smith is significantly less substantial than the threatened harm that may befall ActivEngage. There is no reason to believe that, once enjoined, Smith would be unable to continue working without the use of ActivProspect. *See Backjoy*, 2015 WL 12915119 at *5 ("the full gambit of injuries potentially arising from Defendants' misappropriation—including loss of sales and goodwill—is substantial.").

    **C.**    **Granting Injunctive Relief Will Not Harm the Public Interest.**

To obtain an injunction pending appeal, a movant must establish that injunctive relief will serve the public interest. *Siegel, 234 F.3d at 1176*. Here, ActivEngage has a legitimate business interest in ActivProspect and in any revenue resulting from the use of ActivProspect. The granting

15

of an injunction pending appeal prohibiting Smith from further misappropriation of ActivProspect will further the public interest because the injunction sought herein protects ActivEngage's legitimate business interests and prohibits Smith's wrongful conduct and theft of ActivProspect for use to the detriment of its rightful owner. *See Backjoy*, 2015 WL 12915119, at *5 ("As a general matter, 'Florida law recognizes that protecting trade secrets furthers the public interest.'") (citing *All Leisure Holidays Ltd. v. Novello*, 2012 WL 5932364, at *6 (S.D. Fla. Nov. 27, 2012). *Meacham*, 2019 WL 2637053 at *5 (citing *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1308 (S.D. Fla. 2004) ("holding that the public interest is served by protecting a business's investment in confidential and proprietary information"). Further, this Court's granting of an injunction pending appeal comports with public policy by preventing Smith (and 360Converge) from gaining an unfair advantage over ActivEngage with respect to ActivProspect..

## CONCLUSION

Based on the foregoing, ActivEngage has established all of the elements required to obtain an injunction pending appeal against Smith in this action.

WHEREFORE, Plaintiff, ACTIVENGAGE, INC., respectfully requests the following: (i) an injunction pending appeal: (a) enjoining Smith and Smith's agents from engaging in, aiding or assisting Smith in activities and actions in violation of FUTSA, (b) enjoining Smith and Smith's agents from engaging in, aiding or assisting Smith in activities and actions in violation of DTSA; (c) enjoining Smith and Smith's agents from violating the Stockholder Agreement, in particular, Section 1.03, Article 8 thereof; (ii) an award of ActivEngage's attorneys' fees; and (iii) such other and further relief as this Court deems just and proper.

Dated:  December 11, 2019.

                                            */s/ Melody B. Lynch*
                                            **JON M. GIBBS, ESQUIRE**
                                            Florida Bar No. 494534
                                            **MELODY B. LYNCH, ESQUIRE**
                                            Florida Bar No. 0044250
                                            **JAMES S. TOSCANO, ESQUIRE**
                                            Florida Bar No. 899909
                                            Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
                                            215 North Eola Drive
                                            P.O. Box 2809
                                            Orlando, Florida 32802-2809
                                            Telephone: (407) 843-4600
                                            Facsimile:  (407) 843-4444
                                            jon.gibbs@lowndes-law.com
                                            melody.lynch@lowndes-law.com
                                            james.toscano@lowndes-law.com
                                            judith.sullivan@lowndes-law.com
                                            janie.kearse@lowndes-law.com
                                            carol.anderson@lowndes-law.com
                                            litcontrol@lowndes-law.com
                                            *Attorneys for Plaintiff, ActivEngage, Inc.*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 11th day of December, 2019, a true and correct copy of the foregoing was filed with the Clerk of Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of this Court by using the CM/ECF system, which will send notice of electronic filing and complete service of the foregoing as required by Fed. R. Civ. P. 5 to the following:  **David E. Cannella, Esquire and Kristin N. Royal, Esquire**, Holland & Knight, LLP, 200 South Orange Avenue, Suite 2000, Orlando, Florida 32801, david.cannella@hklaw.com; kristin.royal@hklaw.com.

                                            */s/ Melody B. Lynch*
                                            **Melody B. Lynch**